**Robin WEAVER, Appellant**

v.

**LANCASTER NEWSPAPERS INC.,**
**Intelligencer Journal and Oscar**
**Lee Brownstein, Appellees**

Superior Court of Pennsylvania.

Argued Oct. 26, 2004.
Filed May 2, 2005.
Reargument Denied July 7, 2005.

Jeffrey P. Paul, Lancaster, for appellant.

George C. Werner, Lancaster, for Lancaster Newspapers.

Harry D. McMunigal, Wyomissing, for Brownstein.

Before: STEVENS, McCAFFERY, and TAMILIA, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Lancaster County granting summary judgment in favor of Appellees Lancaster Newspapers, Inc., *Intelligencer Journal*, and Oscar Lee Brownstein and dismissing with prejudice Appellant Police Officer Robin Weaver's claims of defamation. On appeal, Appellant contends the trial court erred in concluding Appellant did not state

a *prima facie* case for defamation in that he failed to establish that Appellees acted with "actual malice." We affirm.

¶2 The undisputed facts and procedural history are as follows: Appellant is an East Lampeter Township, Lancaster County, Police Officer who investigated the December 20, 1991 brutal murder of sixteen-year-old Laurie Show. On approximately July 20, 1992, Lisa Michelle Lambert was convicted of murdering Ms. Show;[1] however, Ms. Lambert subsequently filed a petition for a writ of *habeas corpus* with the U.S. District Court for the Eastern District of Pennsylvania. On April 28, 1997, in a published opinion, District Court Judge Dalzell granted Ms. Lambert's petition ordering that she be immediately released and found innocent of murdering Ms. Show. *Lambert v. Blackwell*, 962 F.Supp. 1521 (E.D.Pa.1997).[2] In so doing, Judge Dalzell attacked the credibility, character, and reputation of the entire East Lampeter Township Police Department, including Appellant. Judge Dalzell specifically accused Appellant of fabricating and destroying evidence and likely perjuring himself. During the federal proceedings, Ms. Lambert accused three police officers, including Appellant, of raping her. However, no charges were filed against Appellant in connection with this allegation.

¶3 The federal court's opinion generated extensive media coverage and public commentary. Among such was a letter to the editor authored and sent by Appellee Brownstein to the *Intelligencer Journal*.[3] Assistant Editor Earle D. Cornelius reviewed the letter, and the letter appeared in the newspaper on Monday, June 23, 1997. At issue in this case is the following excerpt from the letter:

> Now, here is an unanswered question: How did Officer Robin Weaver—who knew Lambert and Yunkin,[4] and who presumably led two other policemen into Lambert's apartment—know that Lambert would be home alone, that the door to the apartment had been broken by Yunkin in a fit of anger, and that Yunkin would not return while they were allegedly in the apartment raping Lambert at gunpoint? Of course, maybe Lambert just made up the whole story, knowing that five years later Weaver would be arraigned for the sexual abuse of women and children. Sure.

¶4 On June 12, 1998, Appellant filed a complaint raising claims of defamation against Appellees. In his complaint, Appellant indicated that he never raped or was charged with raping Ms. Lambert and he was never arraigned for the sexual abuse of women and children. On December 31, 2003, Appellees Lancaster Newspapers, Inc., and the *Intelligencer Journal* filed a motion for summary judgment alleging that Appellant is a public official and that he failed to prove that the newspaper acted with actual malice in publishing Appellee Brownstein's letter. On January 2, 2004, Appellee Brownstein filed a motion for summary judgment alleging

1. A panel of this Court affirmed Ms. Lambert's conviction, and the Pennsylvania Supreme Court denied Ms. Lambert's petition for allowance of appeal.

2. The district court's decision was subsequently vacated by the Third Circuit Court of Appeals. *Lambert v. Blackwell*, 134 F.3d 506 (3rd Cir.Pa.1997).

3. Appellee Lancaster Newspapers, Inc., owns and operates the *Intelligencer Journal*.

4. Lawrence Yunkin had a relationship with both Ms. Lambert and Ms. Show. At the time of Ms. Show's murder, Ms. Lambert was pregnant. The federal court indicated in its decision that Yunkin confessed to participating with Tabitha Buck in murdering Ms. Show.

Appellant failed to prove, *inter alia*, that Appellee Brownstein acted with actual malice in authoring/publishing the letter.

¶ 5 Appellant answered the motions for summary judgment, and by order filed February 26, 2004, the trial court granted Appellees' motions for summary judgment and dismissed Appellant's complaint with prejudice. Specifically, with regard to the statement that Appellant and other officers allegedly raped Ms. Lambert, the trial court concluded there was no liability because Ms. Lambert's allegation of rape was of public record. Trial Court Opinion filed 2/26/04 at 3–4 n. 2. With regard to the statement that Appellant was arraigned for the sexual abuse of women and children, the trial court concluded that Appellant failed to demonstrate that Appellees acted with actual malice in authoring/ publishing the letter to the editor. This timely appeal followed, the trial court ordered Appellant to file a statement pursuant to Pa.R.A.P.1925(b), Appellant filed the required statement, and the trial court filed a Pa.R.A.P.1925(a) opinion.

¶ 6 The scope and standard of review governing a motion for summary judgment is well settled.

> As with all questions of law, our scope of review of a trial court's order granting summary judgment is plenary. Our standard of review is the same as that of the trial court; we must view the record in the light most favorable to the non-moving party granting h[im] the benefit of all reasonable inferences and resolving all doubts in h[is] favor. We will reverse the court's order only where the appellant[...] demonstrates that the court abused its discretion or committed legal error.

\* \* \* \* \* \*

*Pennsylvania Rule of Civil Procedure 1035.2* provides that any party may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury.

*Wisniski v. Brown & Brown Ins. Co. of Pa.*, 852 A.2d 1206, 1211–1212 (2004) (quotations omitted). This Court must apply a three-step test to determine if the trial court has improperly resolved issues of material fact:

> Initially, it must be determined whether the plaintiff has alleged facts sufficient to establish a *prima facie* case. If so, the second step is to determine whether there is any discrepancy as to any facts material to the case. Finally, it must be determined whether, in granting summary judgment, the trial court has usurped improperly the role of the jury by resolving any material issues of fact.

*Dudley v. USX Corp.*, 414 Pa.Super. 160, 606 A.2d 916, 920 (1992), *appeal denied*, 532 Pa. 663, 616 A.2d 985 (1992).

¶ 7 Appellant raises defamation claims against Appellees. In Pennsylvania, the Uniform Single Publication Act prescribes basic elements of the plaintiff's burden of proof in an action for defamation.[5] *See* 42

---

5. We note that this Court has held that published "letters to the editor" may constitute defamation. *See Dougherty v. The Boyertown Times*, 377 Pa.Super. 462, 547 A.2d 778 (1988).

Pa.C.S.A. §§ 8341–8345. Section 8343 provides as follows:

§ 8343. Burden of Proof

 (a) Burden of plaintiff.-In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

42 Pa.C.S.A. § 8343 (emphasis in original). Case law prescribes additional elements that arise in relation to the role of the plaintiff as a public official or public figure and the role of the defendant as a media outlet. "If the statement in question bears on a matter of public concern, or the defendant is a member of the media, First Amendment concerns compel the plaintiff to prove, as an additional element, that the alleged defamatory statement is in fact false." *Lewis v. Philadelphia Newspapers, Inc.*, 833 A.2d 185, 191 (Pa.Super.2003) (citations and quotations omitted). Moreover, "in every defamation action brought by a public figure, the plaintiff must first show actual malice in order to establish the liability of the defendant." *DeMary v. Latrobe Printing and Publishing Co.*, 762 A.2d 758, 764 (Pa.Super.2000). "[A]ctual malice is a fault standard, [and] it is not shown by the falsity of the statement in and of itself." *Lewis*, 833 A.2d at 192 (citation omitted). Actual malice exists when the defendant acted "with knowledge that [the statement] was false or with reckless disregard of whether it was false...." *Lewis*, 833 A.2d at 191 (quotation marks and quotation omitted). To establish a reckless disregard, a plaintiff must produce clear and convincing evidence that the defendant, in fact, entertained serious doubts as to the truth of his publication. *See Lewis, supra.*

Reckless disregard for the truth, i.e., 'actual malice,' is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

Mere negligence or carelessness is not evidence of actual malice. A defendant's failure to verify his facts may constitute negligence, but does not rise to the level of actual malice. That is, while it arguably may be negligent not to check independently the veracity of information before publication, this fault does not rise to the level of actual malice.

*Reiter v. Manna*, 436 Pa.Super. 192, 647 A.2d 562, 565 (1994) (citations, quotations, and quotation marks omitted) (emphasis omitted).

'[W]hile 'actual malice' may be shown by circumstantial evidence of events surrounding the publication of the offending statement, that evidence must tend to establish fabrication, or at least that the publisher had 'obvious reason to doubt the veracity of the informant or the veracity of his reports.' Because 'actual malice' is a fault standard, it is not shown by the falsity of the statement in and of itself. Similarly, evidence of ill

will or a defendant's desire to harm the plaintiff's reputation, although probative of the defendant's state of mind, without more, does not establish 'actual malice.' *Lewis*, 833 A.2d at 192 (citations and quotation omitted).

■ ¶ 8 "[T]he actual malice standard, by design, assures that public debate will not suffer for lack of imaginative expression or rhetorical hyperbole which has traditionally added much to the discourse of this Nation." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 2, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990) (quotations omitted). Moreover, the question of whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law, and, where appropriate, summary judgment may be entered if the plaintiff fails to demonstrate actual malice. *See Tucker v. Philadelphia Daily News*, 577 Pa. 598, 848 A.2d 113 (2004).

¶ 9 . In the case *sub judice*, Appellant does not dispute that he is a public official and that he is subject to the actual malice standard with regard to all Appellees. *See Stickney v. Chester County Communications, Ltd.*, 361 Pa.Super. 166, 522 A.2d 66 (1987) (holding that police officers are public officials for purposes of defamation). However, Appellant contends the trial court erred in concluding he failed to establish a *prima facie* case of actual malice and, in so doing, the trial court improperly resolved genuine issues of material fact in favor of Appellees.

■ ¶ 10 The first statement at issue in the letter to the editor was the assertion that Appellant and two other policemen "were allegedly in the apartment raping Lambert at gunpoint." [6] In its opinion, the trial court concluded that the statement was not actionable as to any of the Appellees since all parties acknowledged during oral argument that Ms. Lambert had publicly accused Appellant and two other officers of raping her. [7] Ms. Lambert's allegation was made during the federal hearing and was made a part of the public record. We agree with the trial court that Appellant failed to establish that Ms. Lambert did not make this allegation. Therefore, Appellees' act of authoring/publishing a statement indicating Appellant allegedly raped Ms. Lambert was not done with knowledge that such an allegation was not made or with reckless disregard as to whether the allegation was made.

■ ¶ 11 The second statement at issue in the letter to the editor was the assertion that "maybe Lambert just made up the whole story, knowing that five years later [Appellant] would be arraigned for the sexual abuse of women and children. Sure." All parties agree that Appellant has never been arraigned for the sexual abuse of women and children. The issue is whether Appellant has set forth a *prima facie* case indicating that Appellees acted with "actual malice," i.e., they knew the statement was false or they subjectively entertained serious doubt as to the truth of the statement. *See Reiter, supra.*

¶ 12 With regard to Appellee Brownstein, the trial court concluded that Appellee Brownstein did not act with actual

6. We note that the letter to the editor did not state that Appellant, in fact, raped Ms. Lambert; but rather, that Appellant "allegedly" raped Ms. Lambert.

7. This Court contacted the trial court and was informed that no transcript exists as to the summary judgment oral argument. As such, we are unable to review a transcript to determine if Appellant made such an acknowledgment. However, we note that, in his brief, Appellant admits that Ms. Lambert publicly accused Appellant and two other policemen of raping her. Appellant's Brief at 36.

malice because, when he authored the letter and sent it to the newspaper, he believed, albeit mistakenly, that Appellant had been arraigned for the sexual abuse of women and children. The trial court concluded that Appellee Brownstein, in good faith, confused Appellant with East Lampeter Township Police Officer Reed, who had been arraigned for sexual abuse. Appellant does not dispute that a good faith mistake of identity made under the circumstances of this case would not support a finding of actual malice. However, Appellant argues that, in accepting Appellee Brownstein's testimony as true, the trial court made a credibility determination on a material issue of fact and that a reasonable fact finder could conclude that Appellee Brownstein did not make a good faith mistake but rather made the statement knowing it was false.[8] To wit, Appellant argues there was evidence tending to show that Appellee Brownstein had an "agenda," which was to prove to the public that Ms. Lambert was innocent of murder even if he had to lie. To further his argument, Appellant argues (1) Attorney Albert testified Appellee Brownstein was absolutely convinced Ms. Lambert was innocent of murder and Appellant was involved in some type of crime, (2) Attorney Albert

warned Appellee Brownstein that his opinions might not be based on fact, (3) Appellee Brownstein unreasonably claimed that he had not developed an opinion regarding Ms. Lambert and denied he was "hell bent" on proving her innocence, and (4) Appellee Brownstein gave Heather Johnson permission to reprint his letter to the editor on the internet even after Appellant's lawsuit was filed.[9]

¶ 13 Attorney Albert testified the first time he discussed with Appellee Brownstein the fact an East Lampeter Township Police Officer was arraigned for sexual abuse was after Appellee Brownstein's letter to the editor was published. Deposition of Neil L. Albert, Esquire, dated 3/13/00 at 46. Attorney Albert indicated that, when he asked Appellee Brownstein about the letter to the editor, Appellee Brownstein said he had confused the names of the officers and had made a mistake. *Id.* at 34–35, 46. Specifically, Attorney Albert testified "[i]t was purely a mistake of confusing the names." *Id.* 3/13/00 at 47. Attorney Albert testified that Appellee Brownstein was a "true believer" in the innocence of Ms. Lambert and the guilt of Appellant. *Id.* at 31. While Attorney Albert expressed to Appellee Brownstein that a local district justice

**8.** With regard to Appellee Brownstein, Appellant does not argue that he acted with reckless disregard of the truth. Rather, Appellant alleges Appellee Brownstein "blatantly and viciously lied about whether [Appellant] had been arraigned for sexually abusing women and children because of his 'agenda.'" Appellant's Brief at 37. Therefore, our analysis regarding Appellee Brownstein focuses on whether Appellant set forth a *prima facie* case that Appellee Brownstein acted with knowledge that his statement was false and not whether he acted with reckless disregard of its falsity.

**9.** Appellant also alleges in a one sentence argument that Appellee Brownstein clearly lied because he did not verify the information. Appellant's Brief at 40. The fact Appellee

Brownstein did not verify which officer was arraigned for sexual abuse tends to support the conclusion he did not know which officer was involved, and, therefore, he did not knowingly lie about the fact as is alleged by Appellant. Moreover, we note that to the extent Appellant attempts to raise a reckless disregard claim against Appellee Brownstein on the basis a reasonable man would have investigated the claim before it was made we conclude that such inaction does not rise to the level of actual malice in this case. *Reiter*, 647 A.2d at 565 ("[A]ctual malice...is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.") (quotation marks and quotation omitted).

disagreed with various portions of the federal court's opinion, Attorney Albert did not testify that the district justice said anything as it relates to Police Officer Reed's arraignment. Simply put, nothing in Attorney Albert's deposition lends support to Appellant's argument that Appellee Brownstein knowingly lied about which officer was arraigned for sexual abuse. To the extent Attorney Albert testified that Appellee Brownstein was convinced of Ms. Lambert's innocence and Appellant was involved in some type of crime, even if such is true, evidence of ill will or even desire to harm Appellant's reputation, without more, does not establish actual malice. *Lewis, supra.*

¶ 14 Appellee Brownstein testified he spoke to Attorney Albert and, for approximately one month, he and Attorney Albert considered writing a book about Ms. Lambert. Deposition of Oscar Lee Brownstein dated 11/30/00 at 15, 21, 24. Appellee Brownstein testified that, before contacting Attorney Albert, he had no preconceived ideas about the Lambert case or Appellant, and he could not recall any conversations where he had discussed the truthfulness of Appellant. *Id.* at 17, 29. Appellee Brownstein indicated he had a general opinion as to Ms. Lambert's involvement in the murder but he never formulated any firm opinions since he did not have an opportunity to review all of the transcripts. *Id.* at 34–35. Appellee Brownstein admitted that he and Attorney Albert did not always agree on the specifics of the Lambert case and the role of the prosecution, and he did not like the fact Attorney Albert called Ms. Lambert "a shit" and "she-devil." *Id.* at 30–31. Appellee Brownstein testified, with regard to the subject statement, he had confused Appellant with a different police officer, who had been arraigned for sexual abuse. *Id.* at 39, 51, 61. Appellee Brownstein indicated that he did not show the letter to the editor to Attorney Albert before it was published. *Id.* at 43–44. Regarding the "Free Lisa Lambert" web site, Appellee Brownstein testified that Heather Johnson, who established the web site, contacted Appellee Brownstein after she learned that Appellee Brownstein was being sued for defamation regarding the letter at issue. *Id.* at 64. On the web site, Ms. Johnson indicated Appellee Brownstein gave her permission to reprint the letter to the editor and the letter appeared on the web site on September 6, 1998. *Id.* at 68, 71. Appellee Brownstein testified he gave Ms. Johnson permission to reprint the letter to the editor, *id.* at 69–70, but then later testified that he did not remember giving her permission to reprint the letter, *id.* at 71, 73.

¶ 15 To the extent Appellant argues Appellee Brownstein's deposition indicated that Appellee Brownstein was "hell bent" on proving Ms. Lambert's innocence, which included discrediting Appellant, we find that such evidence of ill will, without more, does not establish actual malice. *Lewis, supra.* Moreover, to the extent Appellant argues Appellee Brownstein's act of permitting Ms. Johnson to reprint the letter to the editor on the internet indicates actual malice, we find the argument to be meritless. Even assuming Appellant could convince a fact finder that Appellee Brownstein permitted Ms. Johnson to reprint the letter on the internet, actual malice relates to Appellee Brownstein's mental state at the time he authored and permitted publication of the letter in the newspaper. The reprint of the subject letter appeared on the internet more than a year after it was published in the newspaper and approximately three months after Appellant filed the instant complaint.

¶ 16 With regard to Appellees Lancaster Newspapers, Inc., and *Intelli-*

*gencer Journal,* the trial court concluded Appellant failed to set forth a *prima facie* case for actual malice in that Appellant merely alleged Appellees failed to investigate Appellee Brownstein's assertion before publishing the letter to the editor. Citing to *Lewis, supra,* the trial court concluded the mere failure to investigate prior to publishing is insufficient to establish actual malice. The trial court acknowledged that a "higher degree of journalistic responsibility would have counseled greater care in reporting" but concluded Appellant did not set forth facts supporting a finding of actual malice. Trial Court Opinion filed 4/23/04 at 8.

¶ 17 During discovery, Appellees Lancaster Newspapers, Inc., and *Intelligencer Journal* indicated that they did not contact Appellant or otherwise investigate Appellee Brownstein's claim Appellant was arraigned for sexual abuse because they concluded the statement was a non-factual, sarcastic statement or a statement of rhetorical hyperbole. Appellant argues there is a genuine issue of material fact as to whether Appellees believed, in good faith, that the statement was not one of fact and whether they should have investigated the serious allegation of sexual misconduct before publishing the letter.[10]

¶ 18 Charles Raymond Shaw testified that he is the *Intelligencer Journal's* editor, and he published many of Appellee Brownstein's letters to the editor. Deposition of Charles Raymond Shaw dated 11/30/00 at 10. Mr. Shaw testified that he found out, for the first time, that Officer Reed, but not Appellant, had been arraigned for sexual abuse when Appellant filed his defamation action.[11] *Id.* at 35.

¶ 19 Earle Dale Cornelius, III, testified that he is an assistant editor at the *Intelligencer Journal,* and he has approved the publishing of approximately fifteen letters to the editor which were authored by Appellee Brownstein. Deposition of Earle Dale Cornelius, III, dated 11/30/00 at 6, 9. Mr. Cornelius indicated the content of the letters was primarily political or community oriented and that Appellee Brownstein used a lot of rhetorical hyperbole in his writing. *Id.* at 9, 27. Mr. Cornelius testified he had met Appellee Brownstein on one occasion in approximately 1995 when Appellee Brownstein wanted to meet with the editorial board. *Id.* at 9. Mr. Cornelius testified that he reviewed the subject letter before it was published and believed it contained accurate information. *Id.* at 18–19. He also testified that he did not contact Appellee Brownstein or Appellant prior to publishing the letter. *Id.* at 19, 44. Mr. Cornelius believed that Appellee Brownstein's use of the word "sure" indicated a sense of rhetorical hyperbole and not that he was making a statement of fact. *Id.* at 25, 27. Mr. Cornelius testified he did not believe Appellee Brownstein was making a serious allegation against Appellant. *Id.* at 29. Mr. Cornelius indicated that if it was determined that letters contained untrue factual allegations then the letters were not published. *Id.* at 12–13. Mr. Cornelius testified that, prior to the instant lawsuit, he never believed that anything in Appellee Brownstein's subject letter to the editor was false, and he had never been contacted by any citizen after

---

**10.** With regard to Appellees Lancaster Newspapers, Inc., and *Intelligencer Journal,* Appellant has advanced an argument that Appellees acted with reckless disregard of the truth and not that Appellees, in fact, knew the assertion was false.

**11.** In his brief, Appellant cites to a portion of Mr. Shaw's testimony to support the proposition that Appellees did not care whether Appellee Brownstein's allegation was true. Appellant's Brief at 49–50. The cited portion pertains to a letter apparently written by Arthur Bender and is not relevant to this appeal.

the letter was published indicating that the letter contained inaccurate information. *Id.* at 37–38.

¶ 20 Appellee Brownstein testified that he is relatively certain that someone from the *Intelligencer Journal* contacted him to verify that he authored the letter to the editor but the person did not ask him any questions concerning the content of the letter. Deposition of Oscar Lee Brownstein dated 11/30/00 at 39–41. Appellee Brownstein testified that he had never met Mr. Shaw but that he had met Mr. Cornelius on one occasion before Appellee Brownstein was aware of the Lambert case. *Id.* at 43, 83–84. Appellee Brownstein did not speak to Mr. Cornelius about the Lambert case, and since nearly a year had passed when Appellee Brownstein first learned he had confused Appellant with Officer Reed, he did not contact the *Intelligencer Journal* to let anyone know that he had made a mistake. *Id.* at 84, 106.

¶ 21 Based on the aforementioned, we agree with the trial court that Appellant failed to establish a *prima facie* case of actual malice with regard to Appellees Lancaster Newspapers, Inc., and *Intelligencer Journal.* Simply put, there was no evidence from which a finder of fact could reasonably conclude that Appellees fabricated or had "obvious reason to doubt the veracity of the informant or the veracity of his reports." *Lewis,* 833 A.2d at 192 (quotation marks, quotation, and citation omitted). Even assuming a jury could find that Appellee Brownstein's statement was meant to be one of fact, and not mere rhetorical hyperbole, and that Appellees should have investigated the matter before publishing the letter to the editor, such failure does not amount to actual malice. *Fitzpatrick v. Philadelphia Newspapers, Inc.,* 389 Pa.Super. 438, 567 A.2d 684 (1989). As this Court has often indicated,

the "standard to be applied is not objective (i.e.. whether a reasonably prudent person would have published the challenged article), but subjective...Failure to investigate, without more, will not support a finding of actual malice, nor will ill will or a desire to increase profits." *Fitzpatrick,* 567 A.2d at 688 (citations omitted). *See Lewis, supra; Curran v. Philadelphia Newspapers, Inc.,* 376 Pa.Super. 508, 546 A.2d 639 (1988). "[E]rroneous statement is inevitable in free debate, and...must be protected if the freedoms of expression are to have the 'breathing space' that they need to survive." *Curran,* 546 A.2d at 645 (quotation omitted). To minimize judicial intrusion into this "breathing space," "our courts have tended to measure actionable conduct by what the defendant did, as opposed to what it refrained from doing or might have done but omitted to do." *Lewis,* 833 A.2d at 192 (citing *Fitzpatrick, supra* and *Curran, supra* ). Actual malice may be shown by circumstantial evidence surrounding the publication of the offending statement. *See Curran, supra.* However, upon reviewing all of the evidence adduced in opposition to Appellees' motion for summary judgment, there is no evidence of actual malice. The fact the letter may have contained a false allegation and Appellees failed to investigate prior to publishing the allegation is insufficient to establish actual malice. There is no evidence of record that Appellees had reason to doubt Appellee Brownstein's assertion or that the assertion was so highly improbable that only a reckless man would have put the assertion into circulation. *See Curran, supra.* "Even if a higher degree of journalistic responsibility would have counseled greater care in reporting, 'actual malice' is not established." *Lewis,* 833 A.2d at 193 (citation omitted).

¶ 22 Finally, we note that Appellant argues extensively that the trial court used

an improper standard in determining whether Appellant established a *prima facie* case for actual malice. *See* Appellant's Brief at 44–50. Appellant contends the trial court improperly focused on Appellees' subjective state of mind. We conclude the trial court properly indicated in its order and Pa.R.A.P.1925(a) opinion that "actual malice is proven by 'applying a subjective standard by evidence that the defendant[s] in fact entertained serious doubts as to the truth of its publication by clear and convincing evidence.' " Trial Court Opinion filed 4/23/04 at 6 (*quoting Lewis,* 833 A.2d at 191, 192); Trial Court Order filed 2/26/04 at 2 (*quoting Lewis,* 833 A.2d at 191, 192). Such a subjective standard is clearly supported by case law. *See Tucker, supra* (holding that plaintiff was required to establish evidence of defendant's state of mind in order to survive preliminary objections); *Lewis, supra; Reiter, supra.*

¶ 23 To the extent Appellant cites to *Dougherty v. Boyertown Times,* 377 Pa.Super. 462, 547 A.2d 778 (1988) to support his claim, we find the case to be inapplicable. *Dougherty* involved defamation claims made by a chiropractor, who was deemed to be a private individual. The actual malice standard does not apply in such a case. *See Dougherty, supra.* Moreover, to the extent Appellant cites to *Curran, supra* to support his claim, we note the trial court used the test endorsed by this Court in *Curran, supra.* That is, in *Curran, supra,* this Court indicated that in proving actual malice the plaintiff must show that the defendant realized the statement was false or subjectively entertained serious doubt as to the truth of the statement. In so doing, this Court indicated that the circumstantial evidence surrounding the publication of the statement may be analyzed to determine intent. As this

is what the trial court did in the case *sub judice,* we find no error.

¶ 24 Affirmed.

¶ 25 Judge McCAFFERY files a Concurring Statement.

McCAFFERY, J., Concurring:

¶ 1 While the state of the law in this Commonwealth compels my concurrence in the well-reasoned majority Opinion of my esteemed colleague, the Honorable Correale F. Stevens, I am compelled to register my disapproval with the way the "actual malice" standard must be applied in this case. As the majority correctly states, to prove "actual malice" one must demonstrate that the defendant knew the statement was false or entertained serious doubts as to the truth of the publication. *Lewis v. Philadelphia Newspapers, Inc.,* 833 A.2d 185, 191 (Pa.Super.2003). This is a rigorous, if not impossible, burden to meet in most circumstances.

¶ 2 In this case, the "actual malice" standard operates to allow an egregious and damaging misstatement of fact regarding a law enforcement officer to be published without any repercussions for the author or for the publication which has disseminated the false statement. While I agree that a newspaper should not be held to a standard which would require a thorough investigation of every statement set forth in its editorial section, certainly a contention that a law enforcement officer had previously been arraigned for the sexual abuse of women and children should have triggered a heightened level of caution on the part of a "responsible" publication. This is especially true in that the newspaper had previously published numerous letters to the editor authored by Oscar Lee Brownstein, in which letters Mr. Brownstein had used what the newspaper's assistant editor characterized as "a lot of rhetorical hyperbole in his writing."

(Deposition of Earle Dale Cornelius, III, dated 11/30/00 at 9, 27).

¶ 3 Furthermore, it is anathema that we must allow the actual author of the injurious statement, Mr. Brownstein, to evade responsibility and avoid liability merely by professing to have made a mistake. This is particularly troubling in that because the case was only at the summary judgment stage, the trial court's assessment that Appellant presented insufficient evidence regarding Mr. Brownstein's alleged "mistake" has effectively stripped Appellant of any chance of redress for the publication which has harmed his reputation in a way which no "retraction" could ever rectify.

¶ 4 Nevertheless, Pennsylvania law requires that the onerous "actual malice" standard be applied. Thus, I am bound to join in the majority in affirming the trial court's order.