**Heil BARTLETT, Appellant,**

**v.**

**BRADFORD PUBLISHING, INC. d/b/a The Bradford Era, John Satterwhite, Publisher, Marty Wilder, Managing Editor and Anne Holliday, Appellees.**

Superior Court of Pennsylvania.

Argued Aug. 31, 2005.

Filed Oct. 17, 2005.

Donna Smith, Coudersport, for appellant.

Charles Kelly, Canonsburg, for Holiday, appellee.

BEFORE: LALLY–GREEN, POPOVICH, and JOHNSON, JJ.

OPINION BY JOHNSON, J.:

¶ 1 In this case, we consider whether Appellant, Heil Bartlett, a public figure, can satisfy the actual malice standard in a defamation suit by alleging that Appellees, Bradford Publishing, Inc. d/b/a *The Bradford Era*, John Satterwhite, Marty Wilder and Anne Holliday (collectively "*The Bradford Era*"), engaged in sub-standard reporting and investigative practices. The trial court found that Bartlett failed to produce evidence that *The Bradford Era* acted with actual malice and entered summary judgment in its favor. On appeal, Bartlett contends that the trial court erred because it failed to view the evidence in a light most favorable to him as the non-moving party and failed to consider evidence proving that *The Bradford Era* published the articles with only limited inquiry into the veracity of its story and sources. We hold that although *The Bradford Era* may have engaged in substandard journalistic practices, substandard journalistic practices do not satisfy the actual malice standard. We conclude, accordingly, that the trial court did not abuse its discretion or commit an error of law when it entered summary judgment in favor of *The Bradford Era*. Consequently, we affirm the Order of the trial court granting summary judgment.

¶ 2 This case arose when Bartlett, a police officer, sued *The Bradford Era* for defamation arising out of two newspaper articles. *The Bradford Era* published the two articles which form the basis for Bartlett's lawsuit, "Discontent extends into Corydon Township also" and "Corydon Twp. residents call for officer's resignation," which were published on February 3, 2001 and February 13, 2001, respectively. The first article reported on the issues that certain Corydon Township residents were experiencing with Bartlett and the second reported on the discussion at a Township Supervisors' meeting, particularly requests by residents that Bartlett resign.

¶ 3 Bartlett alleges that the February 3, 2001, article contains the following defamatory statements:

Officer Heil Bartlett, who also works for the U.S. Forest Service, 'really raises hell with the snowmobilers,' according to Roger Rhoades, owner of The New Willows. (Hereinafter "Raises Hell Statement")

[Rhoades] did say that Bartlett has followed his waitresses home and 'gave them a little lip' for being parked at the

restaurant for hours. ("Little Lip Statement")

'Bartlett overuses his authority to a great degree,' Rhodes said. 'He is way way over zealous.' ("Overuses Authority Statement")

The man was charged with disorderly conduct and resisting arrest as well as DUI. But he was found innocent of those charges by a jury in McKean County Court. ("Found Innocent Statement")

Barlett allegedly said 'I'm telling you ... put down the weapon down ... I'm going to pull my firearm.' ("Firearm Statement")

Brief for Appellant at 8. (corrections made to accurately reflect language used in February 3, 2001 article).

¶ 4 Bartlett alleges that the February 13, 2001 article contains the following defamatory statements:

Some of what [Corydon Township residents] said is Bartlett:

— was following a woman on a snowmobile and, when she slid into a ditch, is said to have tackled her and charged her with alluding [*sic*] police. ("Tackle Statement")

— reportedly stopped the president of the Ohio Snowmobile Association who has had a camp in Corydon Township for 20 years, and confiscated his snowmobile. ("Confiscated Statement")

— stopped a man at Tracy Ridge for allegedly crossing the centerline and allegedly poked the man in the nose and cussed at him in front of his 8–year–old child. ("Tracy Ridge Statement")

During the meeting, another resident brought up an alleged incident in the city in which Bartlett was about to cite a man for violation of the open container law. When the man put the bottle down, Bartlett was said to have cited him for littering. ("Littering Statement")

Brief for Appellant at 8–9.

¶ 5 The articles at issue in this case were written by Anne Holliday, a reporter for *The Bradford Era*. Holliday received an assignment to pursue stories about police enforcement of drunk driving and its effect on Bradford businesses. After working on the assignment for several days, Holliday heard that there were complaints about a certain Corydon Township Police Officer, namely Bartlett. Holliday testified during her deposition that prior to writing the articles, she did not know much about Bartlett.

¶ 6 Prior to writing the February 3, 2001 article, Holliday spoke with two individuals, Roger Rhoades, the owner of The New Willows restaurant, and Thomas Frontino, who had been involved in two incidents with Bartlett. Rhoades was the source for the Raises Hell Statement, Little Lip Statement, and Overuses Authority Statement in the February 3, 2001 article. Rhoades is a successful business owner and is respected in the community. Frontino provided the Found Innocent Statement and the Firearm Statement. Frontino was an eyewitness to the Firearm Statement and he gave Holliday the name and number of his attorney. Frontino did not want to be identified as a source in Holliday's article because he feared retaliation from Bartlett. Holliday wrote the February 3, 2001 article on February 2, 2001. Jim Eckstrom, the city editor, reviewed the article.

¶ 7 Eckstrom then assigned Holliday to cover the Corydon Township Supervisors' meeting on February 12, 2001. The Tackle Statement, the Confiscated Statement, the Tracy Ridge Statement, and the Littering Statement were all made during that meeting. Specifically, John Giordano, Kerry Cook, and another man discussed

the events relating to the statements. The statements were all made in a public forum before the Township Supervisors. After the meeting, Holliday returned to the newsroom and drafted the article. The article was published the following day.

¶ 8 Bartlett brought suit in July of 2001. Following the close of discovery, *The Bradford Era* moved for summary judgment, arguing, *inter alia,* that Bartlett failed to produce sufficient evidence of actual malice. Following oral argument, the trial court granted *The Bradford Era's* Motion. Bartlett filed this appeal.

¶ 9 On appeal, Bartlett presents only one question:

> Did the trial court err as a matter of law where, for the purpose of summary judgment, it failed to view all evidence in the light most favorable to Plaintiff and to consider objective circumstantial evidence showing that Defendants published with "Actual Malice."

Brief for Appellant at 6.

¶ 10 We shall reverse a grant of summary judgment "only if the trial court has committed an error of law or abused its discretion." *Weber v. Lancaster Newspapers, Inc.,* 878 A.2d 63, 71 (Pa.Super.2005). "Judicial discretion requires action in conformity with law based on the facts and circumstances before the trial court after hearing and consideration." *Gutteridge v. A.P. Green Servs. Inc.,* 804 A.2d 643, 651 (Pa.Super.2002). "Where the discretion exercised by the trial court is challenged on appeal, the party bringing the challenge bears a heavy burden." *Paden v. Baker Concrete Constr., Inc.,* 540 Pa. 409, 658 A.2d 341, 343 (1995) (citation omitted).

> [I]t is not sufficient to persuade the appellate court that it might have reached a different conclusion if, in the first place, charged with the duty imposed on the court below; it is necessary to go further and show an abuse of

the discretionary power. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Id.* (internal quotations and citations omitted).

¶ 11 As the trial court properly found, Bartlett, as a public figure, must prove that *The Bradford Era* acted with actual malice. " 'Actual malice' is a fault standard, predicated on the need to protect the public discourse under the First Amendment from the chill that might be fostered by less vigilant limitations on defamation actions brought by public officials." *Lewis v. Philadelphia Newspapers, Inc.,* 833 A.2d 185, 191 (Pa.Super.2003). The actual malice standard is "a rigorous, if not impossible, burden to meet in most circumstances." *See Weaver v. Lancaster Newspapers Inc.,* 875 A.2d 1093, 1103 (Pa.Super.2005) (McCaffery, J., concurring). Indeed, "[t]he actual malice standard goes so far as to forbid imposition of liability even in those instances where the defendant negligently publishes false, defamatory statements about a public figure or public official." *Norton v. Glenn,* 580 Pa. 212, 860 A.2d 48, 56 (2004).

¶ 12 "[T]he 'actual malice' standard is a constitutionally mandated safeguard, and, as such, must be proven by clear and convincing evidence, the highest standard of proof for civil claims." *Lewis,* 833 A.2d at 192. This standard requires evidence "so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy of the truth of the precise facts in issue." *Matter of Braig,* 520 Pa. 409, 554

A.2d 493, 495 (1989). If the plaintiff in a defamation case fails to put forth evidence sufficient to support a finding of actual malice, the trial court may grant summary judgment in favor of the defendant. *See Weaver*, 875 A.2d at 1102.

¶ 13 To establish actual malice, there "must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *Curran v. Philadelphia Newspapers, Inc.*, 376 Pa.Super. 508, 546 A.2d 639, 643 (1988) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)).

¶ 14 Bartlett has failed to put forth any evidence, circumstantial or otherwise, that *The Bradford Era*, and specifically Holliday, acted with actual malice. The majority of Bartlett's arguments are an attack on Holliday's alleged failure to properly investigate and properly question her sources before publishing the story. To the extent that Bartlett is arguing that Holliday should have interviewed the Chiefs of Police for the Bradford City Police Department or the Corydon Township Police Department or that she should have inquired further into the veracity of her sources, and her failure to do so constitutes actual malice, those arguments are without merit.

¶ 15 As the trial court correctly noted,

> While Holliday's conduct may arguably have been less than professional, it does not subject her, or her editors and employers, to sanctions for libel because Bartlett has not produced any evidence on which a jury could base a finding that Holliday knew the statements were false or recklessly disregarded the possibility they could be false.

Trial Court Opinion (T.C.O.), 04/12/04, at 8.

¶ 16 Indeed, "[f]ailure to investigate, without more, will not support a finding of actual malice, nor will ill will or a desire to increase profits." *Fitzpatrick v. Philadelphia Newspapers, Inc.*, 389 Pa.Super. 438, 567 A.2d 684, 688 (1989) (citing *Harte–Hanks v. Connaughton*, 491 U.S. 657, 665–666, 688, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989)). The fact that *The Bradford Era* could have employed a higher degree of journalistic responsibility does not constitute actual malice. *See Lewis*, 833 A.2d at 193. "Mere negligence or carelessness is not evidence of actual malice or malice in fact." *Curran*, 546 A.2d at 645 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 283, n. 24, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). Although a failure to corroborate a source's statements may be indicative of sub-standard journalistic techniques, it does not satisfy the actual malice standard. *See e.g., St. Amant*, 390 U.S. at 730, 88 S.Ct. 1323 (holding that trial court properly found lack of evidence for actual malice despite fact that defendant relied solely upon affidavit of single person of unknown credibility); *Curran*, 546 A.2d at 651 (finding lack of evidence for actual malice where reporter mischaracterized statements made during a press conference because of his own admittedly faulty assumptions, despite the fact that fellow reporter had accurately relayed the content of the press conference).

¶ 17 Bartlett also argues that the inconsistent testimony between Holliday and one of her sources regarding the number of times they had spoken prior to Holliday using him as a source is indicative of actual malice. Bartlett asserts that this Court must believe that Holliday "[l]ied about her previous contact with said source," and this is indicative of actual malice. Brief for Appellant at 18. We begin by noting that this Court is not required to believe that this inconsistency, assuming that the source's testimony is

true, is evidence that Holliday purposefully or willfully lied under oath. However, even if, as Bartlett alleges, Holliday lied about how well she knew one of her sources at her deposition, it is not material to the issue of actual malice and summary judgment in favor of *The Bradford Era* was proper.

¶ 18 Pursuant to Pennsylvania Rule of Civil Procedure 1035.2(1), a court may grant summary judgment where there is no genuine issue of material fact. A material fact "is one that directly affects the outcome of the case." *Fortney v. Callenberger*, 801 A.2d 594, 597 (Pa.Super.2002). Disputed facts which are not critical to the issue in the petition will not preclude summary judgment. *See Larsen v. Philadelphia Newspapers, Inc.*, 411 Pa.Super. 534, 602 A.2d 324, 335 (1991) (plurality) (citing *Pierce v. Com. Pennsylvania Board of Probation and Parole*, 46 Pa.Cmwlth. 507, 406 A.2d 1186, 1187 (1979)). Whether Holliday was lying about the number of times she had contact with a news source, when her deposition was taken nearly a year after she allegedly acted with actual malice, is not material to whether she acted with actual malice when she wrote the article a year earlier.

¶ 19 Considering the standard of review we must employ, along with the high burden of proof placed upon Bartlett, we conclude that the trial court did not abuse its discretion in granting summary judgment in favor of *The Bradford Era.*

¶ 20 Order **AFFIRMED.**