J-A07039-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| NORM'S, LTD. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ATLAS NOBLE, LLC, ATLAS RESOURCES, LLC AND CHEVRON APPALACHIA, LLC SUCCESSORS IN INTEREST TO ATLAS AMERICA, INC., AND ATLAS RESOURCES, INC. | |
| Appellee | No. 1377 WDA 2014 |

Appeal from the Order Entered July 30, 2014
In the Court of Common Pleas of Mercer County
Civil Division at No(s): No. 2012-2919

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.:                          **FILED MAY 8, 2015**

Appellant, Norm's, Ltd. (Norm's), appeals from the July 30, 2014 order granting the motion for summary judgment filed by Atlas Noble, LLC, Atlas Resources, LLC, and Chevron Appalachia, LLC (collectively, Atlas), and denying the partial motion for summary judgment filed by Norm's.  After careful review, we affirm.

The following are the facts and procedural history of this case.

> This is a dispute over an oil and gas lease. [Norm's] is an Ohio limited liability company that owns approximately 99 acres in Sandy Creek Township, Mercer, County P[ennsylvania].  The property was (and remains) undeveloped and the family that owns Norm's has only ever used the property for outdoor recreation, including hunting

and camping. On November 29, 2000, Norm's entered into an *Oil and Gas Lease* [(Lease)] with [] Atlas [to allow Atlas to drill wells and extract resources from Norm's' property].

Trial Court Opinion, 10/2/14, at 3 (italics in original) (citations omitted).

The Lease provided that Norm's would receive a 1/8th royalty for any oil or gas extracted from the leased premises. Lease, 11/29/00, at ¶ 4. The initial term of the Lease was 18 months, that would continue indefinitely as long as "oil or gas or their constituents are produced or are capable of being produced on the premises in paying quantities, in the judgment of [Atlas], or as the premises shall be operated by [Atlas] in the search for oil or gas[.]" Lease, ¶ 2. The Lease provided that it would terminate within three months if Atlas did not commence a well on the premises, unless Atlas tendered a "delay rental of $1,180.00 [] each year, payments to be made quarterly until the commencement of a well." *Id.* at ¶ 3. Atlas had the right to consolidate the leased premises with other lands to form an oil and gas development. *Id.* at ¶ 10. The Lease provided that any well located on such a development unit would be "deemed to be located upon the leased premises within the meaning and for the provisions and covenants of this [L]ease[,]" even if the well was not actually physically situated on the leased premises. *Id.* In the event of consolidation, Norm's would receive a proportion of its 1/8th royalty equal to the amount of the leased premises that comprise the consolidated development unit. *Id.*

On July 20, 2001, Atlas filed a *Consolidation of Oil and Gas Leases* with the [r]ecorder's [o]ffice of Mercer County. This *Consolidation* created a single drilling production unit of 50 acres—Sapala Unit 4—by combining 10 of Norm's 99 acres with 40 acres of the land owned by Walter and Hazel Sapala on the eastern border of Norm's' land. The *Well Location Plat* filed with the *Consolidation of Oil and Gas Leases* shows the well being located on the Sapalas' property. Another document indicates that Atlas compensated the Sapalas for having the well placed on their property.

Under [p]aragraph 10 of the *Lease*, Norm's is entitled to 10/50ths of the 1/8 oil and gas royalty from Sapala Unit 4, or .025 of the royalties. A September 14, 2001 amended *Oil Division Order* prepared by Ergon Oil Purchasing, Inc. reflected this division of royalties. Norm's received a copy of the *Oil Division Order* from Atlas. Norm's began receiving royalty checks on January 4, 2002. Norm's has continued to receive monthly royalty checks based on the production from Sapala Unit 4 since that time.

On September 19, 2012, Norm's initiated this lawsuit, seeking rescission of the *Oil and Gas Lease*, damages, and attorneys' fees. Norm's asserted that Atlas breached the *Oil and Gas Lease* by: (1) failing to get Norm's' approval for the placing of the well on the Sapalas' property; and (2) failing to develop the entire 99 acres. Both sides filed cross-motions for summary judgment, and on July 30, 2014 th[e] [trial] [c]ourt granted [Atlas' motion] and denied [Norm's' motion].

Trial Court Opinion, 10/2/14, at 3-6 (italics in original) (citations omitted).

On August 22, 2014, Norm's timely filed a notice of appeal.[1]

On appeal, Norm's raises the following issues for our review, which we have reordered for our discussion.

> [1.] Whether the trial court erroneously granted summary judgment to [] Atlas [] as to its statute of limitations affirmative defense to Norm's' breach of contract claim, as the doctrine of equitable estoppel/tolling precludes [] Atlas [] from invoking the statute of limitations?
>
> [2.] Whether the trial court erred in concluding that [] Atlas [] had no contractual duty to obtain Norm's' approval before placing the subject well on the Sapalas' property?
>
>> A. Whether the trial court erred by refusing to interpret sections 10 and 20 of the [] [L]ease together under the contract principle of *pari materia*, which would expand the meaning of "leased premises" under the [L]ease to include a production unit into which Norm's' property may be consolidated, thereby requiring [] Atlas [] to obtain Norm's' consent for the placement of the well on Sapalas' Property?
>>
>> B. Whether the trial court, in reaching its conclusion as to the meaning of the [L]ease, erroneously relied on Norm's' corporate designee's lay understanding of the terms of only section 20, as opposed to sections 10 and 20 construed together?
>>
>> C. Whether the trial court erroneously based its decision on a lease consolidation/production

---

[1] The trial court and Norm's have timely complied with Pennsylvania Rule of Appellate Procedure 1925(b).

- 4 -

unit provision of 640 acres under section 10 of the "unmodified form lease," which in fact the [L]ease was specifically modified from 640 acres to 50 acres?

[3.] Whether the trial court erred by failing to grant Norm's declaratory judgment with respect to termination/recession of the [L]ease because of [] Atlas['] [] partial abandonment of the lease and the unconscionable nature thereof?

[4.] Whether the trial court erred by failing to grant Norm's' summary judgment on its quiet title claim, as it is derivative of its breach of contract claim to which Norm's' is entitled to summary judgment?

[5.] Whether the trial court erroneously granted summary judgment to [] Atlas [] as to Norm's' claim for breach of the implied covenant to develop?

[A.] Whether the trial court erred in holding that said covenant was disclaimed under the terms of the [L]ease?

[B.] Whether the trial court erred in holding there was no breach of the implied covenant to develop because [] Atlas [] failed to drill even one well on Norm's' property and have only included a mere 10 acres of Norm's' property in a production unit?

Norm's' Brief at 4-5 (some capitalization removed).

Our standard of review for an appeal from the grant of summary judgment is as follows.

As has been oft declared by [our Supreme] Court, "summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." **Atcovitz v. Gulph Mills Tennis Club, Inc.**, 812 A.2d 1218, 1221 (Pa. 2002); Pa.

R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. ***Toy v. Metropolitan Life Ins. Co.***, 928 A.2d 186, 195 (Pa. 2007). In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment "where the right to such judgment is clear and free from all doubt." ***Id.*** On appellate review, then,

an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion. But the issue as to whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo*. This means we need not defer to the determinations made by the lower tribunals.

***Weaver v. Lancaster Newspapers, Inc.***, 926 A.2d 899, 902-03 (Pa. 2007) (internal citations omitted). To the extent that this Court must resolve a question of law, we shall review the grant of summary judgment in the context of the entire record. ***Id.*** at 903.

***Summers v. Certainteed Corp***., 997 A.2d 1152, 1159 (Pa. 2010) (parallel citations omitted).

In its first issue presented for our review, Norm's contends that the trial court erred in finding the statute of limitations barred its breach of contract claim. Norm's' Brief at 20. Norm's argues that the doctrine of equitable estoppel and tolling precludes Atlas from invoking the statute of limitations. ***Id.*** at 21. We disagree.

An action for breach of contract is subject to a four-year statute of limitations. 42 Pa.C.S.A. § 5525(a)(7). Norm's' breach of contract claim in its amended complaint avers that Atlas breached the Lease by failing to obtain Norm's' approval or consent to the final location of the well on Sapala Unit 4. Norm's' Amended Complaint, 10/25/12, at ¶ 24. While the trial court noted that it was unclear when Atlas began drilling the well on Sapala Unit 4, Atlas filed the consolidation of oil and gas leases in the Mercer County recorder's office on July 20, 2001. Trial Court Opinion, 10/2/14, at 8-9. Further, Norm's began receiving royalty checks from the extraction activity on Sapala Unit 4 on January 4, 2002. *Id.* at 9. The trial court found that as of January 4, 2002, Norm's was aware that Atlas was producing oil and gas from its property and that Atlas had not obtained Norm's approval of the well site. *Id.* Accordingly, Norm's had four years from January 4, 2002, or until January 6, 2006, to bring a timely claim for breach of contract. *Id.* The instant action, however, was not commenced until September 19, 2012, over six years after the statute of limitations had expired. Therefore, it is plainly time-barred. *See* 42 Pa.C.S.A. § 5525(a)(7).

Nevertheless, Norm's argues that Atlas was equitably estopped from asserting the defense of the statute of limitations because Atlas did not notify Norm's of the consolidation or obtain Norm's' approval of the well location. Norm's' Brief at 21. "It is the duty of the party asserting a cause

of action to use all reasonable diligence to properly inform himself [or herself] of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." **Lange v. Burd**, 800 A.2d 336, 339 (Pa. Super. 2002) (citation omitted), *appeal denied*, 818 A.2d 504 (Pa. 2003). "If through fraud or concealment the defendant causes the plaintiff to relax his or her vigilance or deviate from his or her right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." **Id.**, *citing*, **Molineux v. Reed**, 532 A.2d 792, 794 (Pa. 1987). The defendant must make an affirmative act of fraud or concealment upon which the plaintiff justifiably relies. **Id.** The plaintiff has the burden of proving such fraud or concealment by clear and convincing evidence. **Id.**

Here, Atlas was not equitably estopped from invoking the statute of limitations against Norm's breach of contract claim. There is nothing in the record to indicate that Atlas perpetrated an act of fraud or concealment that caused Norm's to relax its vigilance or deviate from its right of inquiry. **See Lange**, **supra**. We agree with the trial court that by virtue of the royalty checks Atlas began delivering on January 4, 2002, Norm's was on notice that oil or gas was being produced from Norm's' property. At that time, Norm's had a duty to undertake all reasonable diligence to investigate whether Atlas was complying with the Lease. **See id.** Norm's did not prove by clear and convincing evidence that Atlas undertook any action to conceal its activity or

alleged breach from Norm's. ***See id.*** On the contrary, Norm's had actual knowledge that Atlas breached the contract because Atlas allegedly had not sought Norm's approval of the well location at that point. Therefore, we conclude the trial court did not err in concluding that Norm's could not use the doctrine of equitable estoppel to toll the statute of limitations.[2]

In its last issue presented for our review, Norm's contends the trial court erred in concluding that Atlas did not breach the implied covenant to develop. Specifically, Norm's maintains, "Atlas [has] never drilled a well on the [leased] [p]roperty and [has] used only a mere 10 acres as part of the Sapala Unit. Atlas [has] not further developed the remaining [leased] [p]roperty, which constitutes approximately 90 percent of the acreage." Norm's' Brief at 25 (citation omitted). After careful review, we conclude that the language of the Lease precluded implying a duty to develop on Atlas.

Our Supreme Court has explained, "Pennsylvania law recognizes an implied covenant [to develop] but also recognizes that the specific

_____

[2] Given our conclusion that Norm's is time-barred from bringing a breach of contract action, we need not address Norm's' second issue that the trial court erred in interpreting the contract. Similarly, we need not address Norm's' third or fourth issues, which Norm's admits are derivative of its breach of contract claim. ***See*** Norm's' Brief at 31, 34 (acknowledging its declaratory judgment claim and quiet title claim are derivative of its breach of contract claim). Likewise, given our conclusion that the breach of contract claim is time-barred, we conclude Norm's cross-motion for summary judgment, seeking entry of judgment in its favor on its claims for breach of contract, declaratory judgment, and quiet title, must fail.

agreement of the parties may preclude the application of the doctrine."

***Jacobs v. CNG Transmission Corp.***, 772 A.2d 445, 455 (Pa. 2001).

> An implied covenant to develop the underground resources appropriately exists where the only compensation to the landowner contemplated in the lease is royalty payments resulting from the extraction of that underground resource. Where, however, the parties have expressly agreed that the landowner shall be compensated if the lessee does not actively extract the resource, then the lessee has no implied obligation to engage in extraction activities. Thus, so long as the lessee continues to pay the landowner for the opportunity to develop and produce oil or gas, the lessee need not actually drill wells. At the point where that compensation ceases due to the expiration of the term of the lease, or pursuant the terms of the lease itself, the lessee then has an affirmative obligation either to develop and produce the oil or gas or terminate the landowner's contractual obligations. As this Court stated in ***McKnight v. Manufacturers' Natural Gas Co.***, 23 A. 164, 166 (Pa. 1892): "The defendant cannot hold the premises and refuse to operate them."

***Id.***

In this case, the terms of the Lease preclude the imposition of an implied covenant to develop under ***Jacobs***. The Lease provides two compensation schemes for Norm's depending on Atlas' drilling activity. Norm's is entitled to a royalty payment if Atlas extracts oil or gas from the leased premises. Alternatively, if Atlas is not actively extracting oil or gas, Atlas still must compensate Norm's in the form of a quarterly "delay rental" payment. The language of the Lease provides that it continues "indefinitely" as long as Atlas is making one of those payments. Accordingly, we will not

impose an implied duty to develop on Atlas because it is precluded by the terms of the Lease, which provide that Norm's would be compensated a "delay rental" fee if Atlas was not extracting oil or gas. **See id.**

Additionally, Norm's acknowledges that Atlas was actively operating a well on the consolidated Sapala Unit 4 and was paying Norm's royalties for the extraction of oil or gas from that well. Under the terms of the Lease, this well is deemed to be located upon the leased premises. **See** Lease, 11/29/00, at ¶ 10. By the terms of the Lease, one well on any portion of the 99 acres, providing Norm's royalties, is sufficient to allow the Lease to continue indefinitely. We will not impose a covenant to develop that differs from the express terms of the Lease. **See Jacobs**, **supra**. To the extent that Norm's is arguing Atlas has a duty to completely develop and extract all exploitable resources on the leased premises, there is no provision of the Lease that imposes such a duty and we will not imply it for the above reasons. **See Caldwell v. Kriebel Res. Co., LLC**, 72 A.3d 611, 615 (Pa. Super. 2013) (declining to "impose an implied duty on the lessee to develop [all economically exploitable] strata [of natural gas] in light of the language contained in their contract[, and] particularly in light of the fact that the [lessee is] producing gas pursuant to the [a]greement[.] [Lessee] would also receive delay rentals if no gas were produced[]"), *appeal denied*, 81 A.3d 74 (Pa. 2013). Therefore, Norm's cannot recover for Atlas' alleged

breach of an implied duty to develop because the Lease's specific language precludes the imposition of such a duty.

Accordingly, we conclude that the trial court did not err in granting summary judgment in favor of Atlas. **See Summers**, **supra**. Therefore, we affirm the July 30, 2014 order granting summary judgment in favor of Atlas and denying Norm's' cross-motion for partial summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/2015