J-A27038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AMY B. KLEIN AND WENDY BECK AS CO-EXECUTORS OF THE ESTATE OF EDGAR A. WAITE AND INDIVIDUALLY, | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : | |
| v. | : : | |
| ALAN D. SILVERMAN, ESQUIRE AND GOLD, SILVERMAN, GOLDENBERG & BINDER, | : : : : | |
| Appellees | : | No. 330 EDA 2019 |

Appeal from the Order Entered December 20, 2018
in the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2015-10607

BEFORE: BOWES, J., SHOGAN, J. and STRASSBURGER, J.[*]

MEMORANDUM BY STRASSBURGER, J.: **FILED FEBRUARY 10, 2020**

Amy B. Klein and Wendy Beck (collectively, Appellants), both individually and as co-executors of the estate of Edgar A. Waite, appeal from the order entered on December 20, 2018, which granted summary judgment in favor of Alan D. Silverman, Esquire and Gold, Silverman, Goldenberg and Binder (collectively, Appellees) in this legal malpractice case. After review, we reverse the order granting summary judgment.

> For over [40] years, Attorney Silverman was the attorney for Waite. Attorney Silverman provided legal advice for Waite's business interests and for Waite's estate planning matters. Attorney Silverman's last [face-to-face] contact with Waite was in

_____

[*] Retired Senior Judge assigned to the Superior Court.

the mid to late 1990s.  Appellants are the daughters of Waite and his first wife, who [is] deceased.  Waite and his second wife, Janet Waite [("Mrs. Waite")], were married for approximately [30] years before Waite's death in August 2013. The case *sub judice* arises from the May 31, 2013, sale of two income producing properties, a Midas Muffler and a 7-Eleven Store, ("Commercial Properties"), owned by Waite.

In 2001, Waite established the Edgar A. Waite, Jr. 2001 Family Trust. The 2001 Family Trust reflected Waite's intention to provide for [Mrs. Waite] during her lifetime with income derived from assets placed in the trust, and upon Mrs. Waite's death, the remainder principal would be distributed to separate trusts for the benefit of Waite's issue (daughters and granddaughters of his first marriage).  On January 30, 2006, Waite executed a Last Will and Testament.   Appellants do not dispute that Waite had testamentary capacity in 2006.  The Will provided, *inter alia,* at ITEM 3:

> Specific Bequests--C. "If my wife, JANET WAITE, survives me, I direct that my interests in the following parcels of real estate: 120 South York Road, Hatboro, PA 19040, (Red Barn, Parcel No. 08-00-06661-009); 1790 Easton Road, Doylestown, PA 18901, (Midas Muffler, Parcel No. 09-019003); and 1796 East Road, Doylestown, PA 18901, (7-Eleven, Parcel No. 09-019004), ***if owned by me at my death, be held in further trust for the benefit of my said wife upon the following terms and condition*** [(*sic*)]***:***
>
> (1)   Trustee shall pay the entire net income therefrom, in quarterly or more convenient installments, to my wife, JANET WAITE, during her life.

[***See*** Amended Complaint, 7/17/2017, Exhibit C (emphasis added)]. The Will provided that if Waite owned certain commercial properties at the time of his death, the income from those properties would be paid to the marital trust for the benefit of his wife, and that during her lifetime, she was to receive the entire income from those properties. Mrs. Waite had the ability to invade the principal for her welfare, care, maintenance and support. Appellants were the residuary beneficiaries of the marital trust. Attorney Silverman did not draft the January 30, 2006 Will, but

- 2 -

he was aware of the terms and on two separate occasions he drafted two codicils to the Will.

In August 2006, Waite was diagnosed with Alzheimer's disease. In 2007, Attorney Silverman drafted a durable power of attorney [(POA)] in which Waite appointed his wife as his agent and appointed his daughter as the alternative agent. The durable [POA] did not comply with statutory requirements.

As the disease progressed in 2012, it became necessary to obtain nursing services in the Waite home to assist Mrs. Waite in caring for her husband. At this time, the Waites did not have sufficient income to pay the substantial additional expenses, their living expenses and other, multiple outstanding debts. Eventually, costly [24] hour care became necessary.

In early 2012, Mrs. Waite consulted [Attorney Silverman] as to whether she could sell the Commercial Properties to pay medical bills related to Waite's healthcare. Attorney Silverman advised her that this was possible and it was determined that the Commercial Properties would be sold. Mrs. Waite did not seek financial or tax advice from Attorney Silverman, and there is no evidence that any such financial advice was provided by Attorney Silverman.

Mrs. Waite accomplished the sale of the Commercial Properties as attorney in fact for Waite. As mentioned above, Waite signed a durable [POA] appointing Mrs. Waite as his attorney in fact in 2007. Said 2007 [POA], drafted by Attorney Silverman, did not include the statutory notice. Thus, the title company required a new [POA] form for each property.

Attorney Silverman did not make any inquiry as to Waite's mental capacity to sign but emailed Mrs. Waite that, "[Waite] had to [be] able to comprehend what he is signing for the POA to be valid." Attorney Silverman forwarded the [POAs] prepared by the title company to Mrs. Waite for Waite's signature, and the powers were signed in March 2013, at the time of closing of the sale.

The Commercial Properties' sales price was $1.8 million, and after expenses, realized $1,596,475.24[.] Because the Commercial Properties were sold during Waite's lifetime, the sale was subject to capital gains tax. On the Waites' 2013 federal and

state tax returns, capital gains tax (plus underpayment penalty) totaled $414,791.

Waite passed away on August 5, 2013. Attorney Silverman became the attorney representing the Estate of Edgar A. Waite, thus representing Appellants as executor[s] of their father's estate. The 2006 Will was probated along with the First and Second Codicils from 2011. Unfortunately, Mrs. Waite did not live very long after the death of her husband and she passed away on April 13, 2014, just eight [] months after the death of Waite.

Upon Waite's death, Appellants [filed a complaint against Appellees, wherein Appellants] alleged that they [] suffered damages in the amount of $939,932.24, the difference between the net proceeds of sale and the funds that were deposited into the Family Trust following Waite's death. Alternatively, Appellants allege they are entitled to the present value of $130,491 annual loss of net income suffered by the sale of the Commercial Properties calculated for [a] number of years determined by the trier of fact to be sufficient to fully compensate Appellants. Additionally, Appellants allege they are entitled to an award of punitive damages.

Trial Court Opinion, 4/30/2019, at 1-4 (footnote and some citations omitted; party designations altered).

Following the completion of discovery, Appellees filed a motion for summary judgment. On June 29, 2018, Appellants filed a cross-motion for summary judgment. Following argument,[1] the trial court granted Appellees' motion for summary judgment and dismissed Appellants' claims. Order 12/20/2018. In its opinion to this Court, the trial court explained that, while it determined that Attorney Silverman owed a duty to Waite and his estate

_____

[1] "The trial court limited oral argument to the sole issue of '[w]hether the invalid 2007 [POA] and subsequent 2013 [POAs were] the proximate cause of any damage to [Appellants].'" Trial Court Opinion, 4/30/2019, at 4-5 *citing* Order, 11/2/2018.

- 4 -

and that Attorney Silverman "failed to exercise ordinary skill, knowledge and diligence possessed by attorneys[,]" Appellees were nonetheless entitled to summary judgment because Attorney Silverman's actions were not the proximate cause of any damage suffered by Appellants. Trial Court Opinion, 4/30/2019, at 7.

This timely-filed appeal followed.[2]  Although presented as five distinct issues, Appellants' claims on appeal are all interrelated.  Thus, we shall address them together. In essence, Appellants assert the trial court erred in concluding that Appellees were entitled to summary judgment because Attorney Silverman's actions were not the proximate cause of Appellants' damages.[3]  Appellants' Brief at 5-6;  **See also id.** at 29 ("The sole issue on appeal is whether [Attorney] Silverman's negligent actions were the proximate cause of damage to Appellants.").  We begin with the relevant legal principles.

In reviewing an appeal from the trial court's grant of a motion for summary judgment, we are governed by the following.

> Our scope of review of summary judgment orders is plenary. We apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact.  We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved

---

[2] Both Appellants and the trial court complied with Pa.R.A.P. 1925.

[3] Additionally, Appellants assert the trial court committed "an error of law or an abuse of discretion in failing to find that punitive damages should be imposed upon [Appellees] as to all of [Appellants'] claims[.]" Appellants' Brief at 6.

against the moving party.  Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiffs' proof of the elements of their cause of action.  Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.  Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury.  Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions.  The appellate [c]ourt may disturb the trial court's order only upon an error of law or an abuse of discretion.

***Collins v. Philadelphia Suburban Development Corp.***, 179 A.3d 69, 73 (Pa. Super. 2018) (citation, brackets, and ellipses omitted).

"A cause of action for legal malpractice contains three elements: the plaintiff's employment of the attorney or other grounds for imposition of a duty; the attorney's neglect to exercise ordinary skill and knowledge; and the occurrence of damage to the plaintiff proximately caused by the attorney's misfeasance." ***Kirschner v. K & L Gates LLP***, 46 A.3d 737, 748 (Pa. Super. 2012).  "An essential element to this cause of action is proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or threat of future harm." ***Nelson v. Heslin***, 806 A.2d 873, 876 (Pa. Super. 2002).

> Proximate cause[] is a question of law, to be determined by the judge, and it must be established before the question of actual cause may be put to the jury. A determination of legal causation, essentially regards whether the negligence, if any, was so remote that as a matter of law, [the actor] cannot be held legally responsible for [the] harm which subsequently, occurred.

*Reilly v. Tiergarten Inc*., 633 A.2d 208, 210 (Pa. Super. 1993) (citations and quotation marks omitted; brackets in original).

In this case, Appellants assert that the trial court erred in concluding that Attorney Silverman's negligence was not the proximate cause of Appellants' damages. According to Appellants, "the sale of the properties would not have occurred but for [] Waite signing the invalid 2013 POAs[, Attorney] Silverman's action[s] were a substantial factor in [] Waite signing the POAs[, and therefore, Attorney] Silverman's actions were a proximate cause of the sale of the properties." Appellants' Brief at 35-36. Additionally, Appellants assert that the trial court's conclusion that, if the 2007 POA had been executed properly, the result would have been the same, *i.e.*, the properties would have still been sold, "ignore[s] the significant fact that in 2012 before listing the properties for sale [Mrs.] Waite asked [for Attorney] Silverman's advice on whether to sell" the Commercial Properties. *Id.* at 41-42. Specifically,

> [i]n early 2012[, Mrs.] Waite, citing the increased cost of [Waite's] home care, asked [Attorney] Silverman for advice about whether to sell the properties. [Attorney] Silverman testified that part of their conversation was [Mrs. Waite] saying she was running out of money to care for [] Waite; bills were increasing for the Red Barn Mall property ([] Waite's third commercial property that was not sold); and she was "trying to free up some cash." [Attorney]

- 7 -

Silverman advised [Mrs.] Waite to sell the two properties; but [Attorney] Silverman had made no inquiry into the facts of [Waite's] finances. [Attorney] Silverman did not know what income Midas Muffler and 7-Eleven produced; he did not know the extent of the household expenses; and he did not review the Waites' tax returns. [Attorney] Silverman did not review medical costs associated with [] Waite's care; and he did not ascertain [] Waite's condition. [Attorney] Silverman did not consider the tax consequences of a lifetime sale of real estate.

* * *

Placed in context, [Attorney] Silverman's negligence was the proximate cause of these sales that occurred when [] Waite was 88 years old and at the very end of his life. He lived only 2 months after the properties were sold. Obviously[,] the need for expensive 24 hour home care also ended. Another asset that could have substantially and easily met the Waites' 2012 financial needs was the $188,690 RBC Wealth Management Account that earned no interest, or pennies of interest. There were also three unused cars worth a combined $46,500. Simply put it was a financial catastrophe to sell the properties worth $1.8 million dollars, incur a $414,701 tax, and give up $130,000+ in annual income, to pay bills less than $200,000.

*Id.* at 43-44, 49-50 (citations omitted).

In its opinion to this Court, the trial court reiterated that granting summary judgment in Appellees' favor was appropriate because Attorney Silverman's actions were not the proximate cause of Appellants' injuries.

Appellants allege that due to [Attorney] Silverman's conduct, they have suffered damages in the amount of $939,932.24, the difference between the net proceeds of sale and the funds that were deposited into the [2001] Family Trust following [] Waite's death. In the plain reading of [] Waite's [w]ill, at the time of [] Waite's death, Appellants had only an expectation of an inheritance. Mrs. Waite could have dissipated [] Waite's entire estate in her lifetime as Mrs. Waite was to be the primary, and potentially sole, beneficiary of his estate.

Only if his assets were still in existence at the time of Mrs. Waite's death would the provisions of the family trust apply. There

was no evidence that [] Waite intended to provide his daughters with anything but what remained from his assets upon the death of [Mrs. Waite]. And this is exactly what Appellants received, the remainder of [] Waite's assets upon the death of [Mrs. Waite]. Therefore, the trial court found [Attorney] Silverman's conduct was not a proximate cause of Appellants' alleged damages.

The 2007 [POA] specifically authorized the attorney in fact, Mrs. Waite, "[t]o lease, sell, release, convey, extinguish or mortgage any interest in any real estate I own on such terms as my agent deems advisable ...."  The record reflects that [] Waite lacked the capacity to execute the [2013 POAs] prepared in conjunction with the sale of the properties in 2013. Had the 2007 [POA] included the notice, there would not be a need for the invalid 2013 [POA]. The issue of the [POA] did not make the sale improper or invalid, and that any such alleged negligence on the part of [Appellees] did not cause harm to [Appellants]. Indeed, if the power had been properly prepared, the result would have been exactly the same, namely, the properties would have been sold. While the absence of the statutory notice may have permitted third parties to disregard or refuse to recognize the power, the fact that the power was imperfectly executed did not alter [] Waite's intent to name [Mrs. Waite] as his attorney in fact. Thus, the trial court concluded that [Attorney] Silverman's conduct was not a substantial factor in bringing about Appellant[s'] financial "injury."

* * *

Further, in Ma[y] 2013 when the properties were sold, no one knew that [] Waite would live for only [two] more months. There is no suggestion that [Attorney] Silverman knew that [] Waite would pass away soon after the sale of the properties, so as to hold him liable for failing to advise the Waites that they could forego a substantial capital gains tax if they held the property until after [] Waite's death. There is also no suggestion that [Attorney] Silverman knew that Mrs. Waite would live a mere eight months after [Waite].

Trial Court Opinion, 4/30/2019, at 9-10 (citations omitted).[4] Appellees assert that the record supports the trial court's findings. *See* Appellees' Brief at 9 ("There was no question that [Mrs.] Waite was [Waite's] intended attorney in fact, that the Waites were in need of the funds, and that the funds were utilized to retire their debts, pay for their care, and that [Appellants] received the residuary upon Mrs. Waite's death, exactly as [] Waite had intended and directed."). Notably, both parties stipulated, and the trial court agreed, that there was no dispute of any material facts. We disagree.

> We begin our analysis by reiterating that
>
> summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law[.] … Importantly, the trial court may only grant summary judgment where the right to such judgment is clear and free from all doubt. Moreover, an appellate court may reverse a grant of summary judgment if there has been an error of law or an abuse of discretion.

*Brewington for Brewington v. City of Philadelphia*, 199 A.3d 348, 352 (Pa. 2018) (citations and quotation marks omitted).

The facts in this case, when viewed in the light most favorable to Appellants as the non-moving parties, establish that Attorney Silverman was counsel for Waite for over 40 years, assisting Waite in, *inter alia*, estate planning and business matters. Silverman Deposition, 3/26/2016, at 11-14.

---

[4] The trial court also concluded that, because it "did not find that [Appellees'] conduct was the proximate cause of [Appellants'] damages[,]" granting Appellants' request for punitive damages was "improper." *Id.* at 11.

Attorney Silverman estimated that his last face-to-face contact with Waite was in the 1990s. *Id.* at 31. Waite was diagnosed with Alzheimer's disease in August 2006. Plaintiffs' Motion for Summary Judgment, 6/29/2018, at 3. In 2007,[5] Attorney Silverman assisted the Waites in executing a POA, which granted, in relevant part, certain powers to Mrs. Waite in the event that Waite became disabled or incapacitated. *Id.* at 5 These powers included providing Mrs. Waite with the authority to sell the Commercial Properties as Waite's attorney in fact. *Id. citing* Amended Complaint, 7/17/2017, at Exhibit F. Of significance, the 2007 POA, which was not signed or notarized in Attorney Silverman's presence, lacked the proper statutory requirements for a durable POA. Specifically, "it lacked the required notice to the principal, explaining the significance of rights given to the agent[,] and lacked the acknowledgement of agent, regarding her duty to the principal."[6] *Id.* at 5.

In 2012, Mrs. Waite approached Attorney Silverman about selling the Commercial Properties. Although these properties were solely in Waite's name, Attorney Silverman dealt only with Mrs. Waite[7] during this time. It was

---

[5] Although the 2007 POA was signed after Waite's Alzheimer's diagnosis, Appellants do not allege he was incapacitated at the time. N.T., 11/30/2018, at 9, 23.

[6] *See* 20 Pa.C.S. § 5601(c)-(d).

[7] Regarding his relationship with Mrs. Waite, Attorney Silverman stated that he did not recall meeting Mrs. Waite "more than once, maybe twice[.]" Silverman Deposition, 3/26/2016, at 164. "I didn't have very much contact

Attorney Silverman's understanding that Waite was becoming "frail."[8]

Silverman Deposition, 3/26/2016, at 33, 39, 54-55. Attorney Silverman did

not inquire into the current financial position of the parties nor apprise Mrs.

Waite of the tax implications associated with the sale of the Commercial

Properties during Waite's lifetime. *Id.* at 45-47, 50-55. However, Attorney

Silverman was cognizant that the Waites were having difficulty paying bills

and maintaining the properties. *Id.* at 54-55. Specifically, Attorney

Silverman was aware that the financial issues were due, in some part, to costly

medical care needed for Waite during this time. *Id.* at 45. Upon consultation

with Attorney Silverman, Mrs. Waite decided to sell the Commercial

Properties. *Id.* at 44-45. With Attorney Silverman's assistance, the

--------------------------------------------------

with her until the last couple years, when these properties went up for sale, but she usually would listen to anything I said to her and take it under advice." *Id.*

[8] In October 2012, Attorney Silverman was included on an email exchange regarding Mrs. Waite signing a Midas lease agreement on behalf of Waite. An inquiry was made as to whether it was necessary for Mrs. Waite to sign on behalf of her husband. Plaintiffs' Brief in Support of Summary Judgment, 6/29/2018, at 5, *citing* Amended Complaint, 7/17/2017, at Exhibit J. Art Loatka, Jr., corporate counsel for Midas, responded that it was "because [Waite] has [A]lzheimer[']s and []is no longer capable of signing." *Id.* Attorney Silverman responded that he was not aware Waite was "not capable of understanding his affairs. He has become a little physically challenged but he is capable of understanding his actions and is therefore capable of entering into the lease exten[s]ion." *Id.* At his deposition, Attorney Silverman stated that, after receiving this email, he spoke with Waite on the phone and asked if there were any problems, to which Waite responded "no." Silverman Deposition, 3/26/2016, at 41. It does not appear that Attorney Silverman followed up any further on this issue after he spoke with Waite.

Commercial Properties were listed for sale and eventually a buyer was procured. During this time, Attorney Silverman assisted with negotiations, spoke with representatives from Midas and 7-Eleven, exchanged correspondence with the real estate agent hired to sell the Commercial Properties, and relayed pertinent information to Mrs. Waite. *Id.* at 56-64, 108-117. Attorney Silverman did not, however, have any contact with Waite. *Id.* at 39.

A few days before the anticipated closing on the Commercial Properties, Attorney Silverman was made aware that the 2007 POA did not comply with the statutory requirements. Because of this, it was requested that a compliant POA for each property be executed before closing, to which Attorney Silverman agreed. Plaintiffs' Motion for Summary Judgment, 6/29/2018. Attorney Silverman forwarded to Mrs. Waite an email that included the new POAs and directed Mrs. Waite to have it signed and notarized. In the email, Attorney Silverman acknowledged that "[t]he problem is that [Waite] had [*sic*] to be able to comprehend what he is signing for the POA to be valid." *Id.*, *citing* Amended Complaint, 7/17/2017, at Exhibit G. The POAs (2013 POAs) were signed by Waite, notarized, and provided to the parties at closing. *Id.* at 10. Neither party disputes that Waite was incapacitated at the time he executed the 2013 POA. However, Attorney Silverman has maintained that he only became aware of Waite's Alzheimer's diagnosis after Waite's death. Silverman Deposition, 3/26/2016 at 35.

Instantly, we are persuaded by the trial court's determination that Attorney Silverman's negligence, insomuch as it relates to the 2007 POA and subsequent 2013 POAs, was not the proximate cause of Appellants' alleged harm. Specifically, we find that, under the unique facts of this case, the trial court concluded correctly that Waite's intentions when signing the 2007 POA was to grant Mrs. Waite the authority, *inter alia*, to sell the Commercial Properties, which was precisely what occurred here.

> While the absence of the statutory notice may have permitted third parties to disregard or refuse to recognize the power, the fact that the power was imperfectly executed did not alter [] Waite's intent to name [Mrs. Waite] as his attorney in fact. Thus, the trial court concluded that [Attorney] Silverman's conduct was not a substantial factor in bringing about Appellant[s'] financial "injury."

*See* Trial Court Opinion, 4/30/2019, at, 9-10. As such, we find that, like providing a pen for a signature, Attorney Silverman's actions may have been the "but for" cause, but were not the proximate cause of the damages Appellants alleged to have suffered.

Nonetheless, we observe that there are genuine issues of material fact as to what, as Waite's lawyer, Attorney Silverman was obligated to do, and what he did do: (1) to review his client's finances; and (2) to inform his client about the tax implications before advising the client whether it would be prudent to sell the Commercial Properties. As Appellants point out, regardless of the 2007 POA, Mrs. Waite approached Attorney Silverman in 2012, and sought his advice on whether to sell the Commercial Properties. Due to the

financial issues the Waites were facing, Attorney Silverman advised Mrs. Waite to sell the properties. However, this advice was offered with little or no inquiry into the Waites' finances and without informing Mrs. Waite of the tax implications associated with the sale of these properties during Waite's lifetime.

Based upon the foregoing, we conclude that the trial court erred in granting summary judgment to Appellees. In finding as such, we are mindful that our Supreme Court has emphasized "that it is not [a] court's function upon summary judgment to decide issues of fact, but only to decide whether there is an issue of fact to be tried." *Fine v. Checcio*, 870 A.2d 850, 862 (Pa. 2005) (citing Pa.R.C.P. 1035.2(1)). Further, the focus on summary judgment is not on weight and credibility; instead, it is "whether the proffered evidence, *if* credited by a jury, would be sufficient to prevail at trial." *Weaver v. Lancaster Newspapers, Inc.*, 926 A.2d 899, 906 (Pa. 2007) (emphasis in original).

For these reasons, we conclude that, at a minimum, there are a genuine issues of material fact yet to be resolved. Accordingly, we hold that the trial court erred in granting summary judgment to Appellees.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/20